## CRANE COMPANY *v.* HEMPSTEAD.

### Opinion delivered January 8, 1917.

CONTRACTS—ACCEPTANCE OF OFFER—MEETING OF THE MINDS.—One W. owed money to appellant and H. wrote to appellant on December 11th, asking an extension of time for W., saying that W. would pay appellant "or I will see that he does." Appellant replied recounting its indulgences to W., and stating that the extension would not be given for a later date than January 5th or 10th. *Held,* there being no distinct acceptance of H.'s offer, the judgment of the trial court, that there was no meeting of the minds of the parties, would not be disturbed.

Appeal from Ouachita Circuit Court; *C. W. Smith,* Judge; affirmed.

*Carmichael, Brooks, Powers & Rector* and *A. N. Meek,* for appellant.

1. Hempstead was a partner. His name was used as a part of the trade name. He signed the letter of credit and in correspondence the account was referred to as that of the Watson-Hempstead Plumbing Co. This placed Hempstead on notice that his name was being used as a part of the firm. If not a partner to the contract, he at least was a partner by estoppel. He permitted his name to be used and by acquiescence and conduct is liable as a partner by estoppel. George on

Partnership, p. 87; 29 Ark. 513. He is also bound by his correspondence. He was being held out to the world as a partner.

2. He was liable as a guarantor. Childs on Sur. & Guaranty, pp. 2, 129; 71 Ark. 586.

*T. D. Wynne* and *J. W. Warren*, for appellee.

It is admitted that Hempstead was not a partner; that he only guaranteed the account to the extent of $200.00, and this amount he paid in full settlement of his liability. The correspondence does not show liability nor did Hempstead ever hold himself out as a partner or do any act making him liable. Hempstead was doing no more than using his good offices to induce Watson to pay the bill. The findings of the court are sustained by the evidence and the judgment should be affirmed.

McCulloch, C. J. This is an action instituted in the circuit court of Ouachita county by appellant, Crane Company, a corporation, against R. D. Watson and James Hempstead, alleged to be partners doing business under the firm name of Watson-Hempstead Plumbing Company, to recover on an open account in the sum of $216.73 for goods and merchandise sold and delivered. Watson failed to answer, but the appellee Hempstead filed an answer denying that he was a partner or that he had purchased any goods from appellant. The complaint, as amended, contained an allegation to the effect that appellee had, on a certain date after the debt to appellant was incurred, entered into a writing whereby he undertook to pay the debt in consideration of an extension of time, and appellee in his answer denies that allegation. There was a trial of the issue before the court sitting as a jury, and the court found in favor of appellee, Hempstead, but rendered a judgment by default against Watson in appellant's favor. The only question presented for our consideration is whether or not there is evidence sufficient to sustain the court's finding in favor of appellee Hempstead.

The allegation of the complaint is that Hempstead was a partner in the business, but there is a stipulation in the record concerning the facts of the case in which it is conceded that Hempstead was not a partner of R. D. Watson nor a member of the firm of Watson-Hempstead Plumbing Company. This disposes of the charge that Hempstead was a co-partner and responsible for the debt on that account.

It is contended that even though Hempstead was not a partner, he held himself out to plaintiff as such, and for that reason he is liable for the debt. This contention could be answered merely by the statement that there is no allegation in the complaint that Hempstead by his conduct held himself out as a partner, but even if that were an issue in the case we are of the opinion that the evidence shows abundantly that Hempstead did not hold himself out as a partner, but on the contrary he advised appellant as to his relations with Watson.

It appears from the evidence that Watson and Hempstead were brothers-in-law, and that when Watson went into business at Camden in the early part of the year 1911, Hempstead undertook to assist him in the purchase of goods. Hempstead resided at Fordyce, which is about thirty miles distant from Camden. When the account was opened with appellant, Hempstead entered into a written agreement with appellant whereby he undertook to guarantee the payment of Watson's account to the extent of two hundred dollars, and in a letter written by Hempstead at the time the written guaranty was sent in he explained that he had no interest in the business but was merely assisting Watson in a friendly way. It is true that the name Hempstead appeared on the letterheads, but we think that there was enough evidence to justify the court in finding that this was done without authority from Hempstead, and that he had fully apprised appellant as to his relations with the business, merely as a friend of Watson and not as a partner. Appellee paid the amount of two hundred dollars and withdrew his guaranty, and the writing was surrendered to him at the time he made

the payment. This eliminated the guaranty from the case.

The next contention is that the evidence establishes the liability of Hempstead on the ground that he undertook to pay the debt in consideration of an extension of time. There is in the record considerable correspondence between appellant and Hempstead, and it all tends to show that Hempstead was really acting in a friendly way with respect to the financial embarrassment of his brother-in-law, Watson. There is in the record a letter dated December 17, 1913, written by Hempstead to appellant, in which he asked for more time for Watson, and stated that he (Watson) "will borrow the money and pay you or I will see that he does." Appellant replied to this letter at considerable length, recounting the indulgences of the past, and wound up by stating that the extension would not be given for a later date than the 5th or 10th of January. The letter did not contain any distinct acceptance of appellee's offer to see that Watson would borrow the money to pay the account, or he would pay the account, but merely referred to that as a suggestion, and it appears that Hempstead made no reply.

The court was, we think, justified in finding that there was no meeting of minds of the parties upon an extension so as to operate as a new consideration for Hempstead's agreement to pay the debt. If appellant had meant to hold Hempstead liable, it ought to have distinctly accepted his offer and stated the terms of the extension, so that the correspondence as a whole would represent a specific agreement with respect to the subject matter.

We must treat the findings of the court the same as a verdict of the jury, and since there is sufficient testimony it becomes our duty to leave the findings undisturbed.

The judgment is therefore affirmed.